# EXHIBIT A

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
Luzerne _____ County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | 2023-07349 |

TIME STAMP

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☒ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

**Lead Plaintiff's Name:**
SERENDIPITY THERAPEUTIC RIDING CENTER

**Lead Defendant's Name:**
KALMBACH FEEDS, INC.

**Are money damages requested?** ☒ Yes  ☐ No

**Dollar Amount Requested:** (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☒ Yes  ☐ No

**Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney: Patrick Howard

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE**. If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☒ Other:
  Breach of Warranty

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*Updated 1/1/2011*

**SALTZ MONGELUZZI & BENDESKY P.C.**
BY: Simon B. Paris, Esq.
Patrick Howard, Esq.
Identification No: 88572
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
(215) 496-8282

*Attorneys for Plaintiff
and the putative Class*

---

SERENDIPITY THERAPEUTIC
RIDING CENTER
80 Lamoreaux Road
Hunlock Creek, PA 18621

On behalf of itself and others similarly
situated

*Plaintiff,*

v.

KALMBACH FEEDS, INC.
7148 State Highway 199
Sandusky, OH 43351

*Defendant.*

**LUZERNE COUNTY COURT
OF COMMON PLEAS**

**No.**  2023-07349

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

| NOTICE | AVISO |
|---|---|
| "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) dias, a partir de recibir esta demanda y la notificatión para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir culquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted. |

1

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

North Penn Legal Services, Inc.
33 N. Main Street, Suite 200
Pittston, PA 18640
Phone: (570) 299-4100
Fax: (570) 824-0001

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO.

SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.

## CLASS ACTION COMPLAINT

Plaintiff, Serendipity Therapeutic Riding Center, ("Serendipity" or "Plaintiff"), on behalf of itself and the proposed Class defined below, by Saltz, Mongeluzzi & Bendesky P.C, alleges the following in its class action complaint against defendant, Kalmbach Feeds, Inc. ("Defendant" or "Kalmbach"):

## NATURE OF THE ACTION

1.    Defendant manufactures for sale feed for senior horses, known as Tribute Senior Sport. One of the main ingredients in Senior Sport is beet pulp. As Defendant's website acknowledges—and what is commonly known amongst horse trainers and caregivers—beet pulp can present a considerable threat of choking for a

2

senior horse.

2.    To prevent the risk of choking, horse feed companies, like Defendant, screen the beet pulp during the manufacturing process which is intended to remove larger chunks of pulp, along with other stray items, including roots and stems, that can result in a senior horse choking.  Defendant expressly warrants that its Senior Sport horse feed is "SAFELY MADE" for senior horses.

3.    On April 30, 2023, Plaintiff discovered one of its senior horses, Victory, had choked shortly after eating Senior Sport.  On May 3, just days later, a second senior horse, Chance, also choked immediately following a feeding of Senior Sport. While Chance survived, Victory did not.

4.    Plaintiff notified its local distributor of these incidents, who in turn contacted Defendant to report these choking events. The distributor informed Plaintiff that there was an issue with Defendant's manufacturing process and that large chunks of beet pulp got through the screen.  Defendant wanted the distributor to inform Plaintiff that the screen had since been fixed.

5.    But it is too late.  Victory is dead.  And Defendant knew that it was manufacturing and shipping to hundreds of horse owners in the Commonwealth of Pennsylvania senior horse feed that was *not* "SAFELY MADE." Just the opposite, Defendant knew it was not properly screened for beet pulp and was likely to cause choking.

6.    After unsuccessful effort pre-suit to get Defendant to acknowledge its

3

failures, Plaintiff now files this class action on behalf of itself and all other similarly situated senior horse owners who purchased Tribute Senior Sport for their senior horse, when Defendant knew it was not "SAFELY MADE" and not safe for consumption by senior horses.

## THE PARTIES

7.     Plaintiff Serendipity Therapeutic Riding Center is a nonprofit § 501(c) charity, located in Hunlock Creek, Luzerne County, Pennsylvania.

8.     Defendant Kalmbach Feeds, Inc., is an Ohio Corporation with its corporate offices located in Upper Sandusky, Ohio.  Kalmbach conducts business in Pennsylvania through Kalmbach Feeds of Pennsylvania, 908 Mt. Rock Road, Shippensburg, Pennsylvania 17257. One of the brand names Kalmbach manufactures is Tribute Equine Nutrition.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 42 Pa. Cons. Stat. § 931.

10.    This Court has personal jurisdiction over Kalmbach Feeds pursuant to 42 Pa. Cons. Stat. § 5301(2)(iii), because Kalmbach, as part of its general business, operates continuously and systematically within the Commonwealth of Pennsylvania.

11.    Venue is appropriate in this Court under 231 Pa. Code § 2179, because Plaintiff resides, and Kalmbach regularly conducts business, in Luzerne County.

## FACTUAL ALLEGATIONS

### A. Serendipity

12.    Serendipity Therapeutic Riding Center is a therapeutic horseback riding and agricultural education program in Northeastern Pennsylvania for individuals with special needs as well as foster children working through developmental trauma. Serendipity has also hosted veterans of Iraq and Afghanistan wars who suffer from post-traumatic stress disorder and/or serious life altering injuries. 

5

13.    Serendipity is designed to assist these individuals in finding increased independence through the help of our equine partners within the context of a working farm experience.



14.    Serendipity focuses on an individual's unique needs. Goals are set with individual lesson programs to achieve success and increased independence for each participant.

15.    Serendipity provides a safe, fun, and friendly equine learning environment to all its participants.

### B. Kalmbach's Tribute Senior Sport

16.    Serendipity has used Defendant Kalmbach's branded Tribute Equine Nutrition to feed its horses since 2017. For its senior horses, Serendipity used Kalmbach's branded Tribute Senior Sport®.

6



17.    According to the Tribute website, "[a]s horses age, their digestive tracts are not quite as efficient as they were when they were younger. Aged horses are likely to lose body condition, have difficulty chewing long stem forage, and can often be observed with feed falling out of their mouths."[1]

18.    Tribute's website asserts that "[t]he single most important factor in deciding when to transition a horse to a senior horse is their teeth. Through the aging process, horses will wear down their teeth and even lose some of them. When this happens, horses will have greater difficulty breaking down their feed."[2]

---

[1] https://tributeequinenutrition.com/blogs/news/does-my-horse-need-a-senior-feed#:~:text=As%20horses%20age%2C%20their%20digestive,falling%20out%20of%20their%20mouths.

[2] *Id.*

19.    Tribune's website continues claiming that "[i]t cannot be emphasized enough just how important it is for a horse to break down forage through the grinding action of their molars. It is critical that the particle size of a horse's forage is reduced for not only the ease in swallowing, but also to help increase the surface area available for the digestion process to take place."[3]

20.    "Horses can and do experience choke when feed is not properly reduced through chewing. Additionally, with less surface area available to digestive enzymes and microbes, the horse cannot extract as many nutrients out of their feed."[4]

21.    Tribune's Senior Sport formulation contains beet pulp, which Tribune's website acknowledges presents the risk of horses to choke. On the Senior Sport bag, it expressly claims that Senior Sport is "SAFELY MADE in a dedicated manufacturing facility in the U.S.A." 

## C. Senior Horses Choke On Defective Senior Sport

22.    Serendipity had four (4) senior horses that it fed Kalmbach's Tribute Senior Sport. Two senior horses in particular, Victory, a 24-year-old Hackney-Clydesdale, and Chance, a 29-year-old Kentucky Mountain Horse.

---

[3] *Id.*
[4] *Id.*

8



23.     Serendipity purchased Victory in April 2017 for $3,500. He was used for adult riders who require full assistance, which are, generally, often riders who use wheelchairs or other ambulatory devices for their mobility. In therapeutic riding, horses like Victory require extensive training as well as a unique personality and body type, which is difficult to find all in one horse.

24.     Victory was patient. He let autistic children feel his face and tickle his nose, he let a grieving father who lost his only daughter to suicide cry endlessly on his shoulder and allowed an elderly woman with dementia to ride carefree, while her husband of 50 years sat nearby. In one particularly touching story, a Marine paralyzed from combat injuries sustained in Iraq was able to mount and ride Victory due only to Victory's extraordinary patience.

25.     Chance works with emotional support clients, specifically foster and

adopted youth who are dealing with developmental trauma and/or behavioral and mental health issues. Chance is a happy-go-lucky, very friendly horse and an excellent partner in assisting to help clients build healthy self-esteem and interpersonal relationship skills.

26.    On Sunday, April 30, 2023, Victory was acting oddly, had no interest in eating Senior Sport, his nose was running, breathing rapid and shallow, had an elevated heart rate, and a fever of 104.7°. The veterinarian was called.

27.    The vet performed an ultrasound of Victory's lungs, which showed consolidation, indicating aspiration pneumonia. Blood-work and nasal-swab were given to rule out any infectious diseases. Treatment for aspiration pneumonia began immediately.

28.    On Wednesday, May 3, 2023, following the day's second feeding, Chance—normally very jovial and happy—presented with similar symptoms as Victory. Runny nose, coughing and gagging, all indications of a choke. Given the situation with Victory only 3 days prior—the vet was called again.

29.    While waiting for the vet to arrive, Serendipity's staff began sifting

through Victory's and Chance's grain bins, both which contained Tribute Senior Sport. Within minutes, they had a cup filled with what resembled beef jerky in both appearance and texture, which contained large pieces of beet pulp that had not been processed correctly.



30. After the vet arrived, Chance was also diagnosed with choke. Chance needed to be tubed, which resulted in the removal of a generous amount of debris from his esophagus.

31. Within days, and a series of medications, Chance returned to normal. Victory did not. After Victory's prescribe treatment ended, he refused to eat. Serendipity tried giving him gastrogard to sooth irritation in his stomach. Victory still would not eat.

32. Ultimately, on May 11, 2023, Victory was euthanized.

**D. Defendant Admits that the Senior Sport was Defective.**

33. On May 3, 2023, after discovering the large chunks of beat pulp in the Senior Sport, Serendipity contacted its local distributor, Ridge Road Stables and its sales representative, Gary Wolfinger.

34. On Serendipity's behalf, Mr. Wolfinger contacted Tribute to determine if there were any irregularities with the beat pulp in the Senior Sport.

35. After speaking with Tribute, Mr. Wolfinger explained to Serendipity

that, indeed, there had been an issue with a screen in one of the machines used in the processing of Senior Sport that allowed large chunks of beet pulp to make its way into the grain.  Mr. Wolfinger explained to Serendipity what he was told by Defendant in a text message:

> They said it's chunks of beet pulp that got thru the screen and yes they had one other complaint last week so that's what she asked me it it could have been from last order cuz they fixed the whole in the screen last week

36.    Mr. Wolfinger offered Serendipity 3 free bags of Senior Sport.

37.    On May 8, 2023, Serendipity's Executive Director, Sarah Matusick, wrote directly to Defendant using the email address on the website: info@tributeequinenutrition.com.

38.    On May 9, 2023, Mrs. Matusick received a telephone call from Nicole Rambo, Ph.D., an Equine Nutritionist employed by Defendant.  Dr. Rambo denied that there was any problem with the screening of the beet pulp but suggested— without further explanation— Serendipity stop using Senior Sport for its senior horses and, instead, switch to the Resolve brand, which is a pelletized feed.  Dr. Rambo offered Serendipity 20 free bags of Resolve.

39.    Dr. Rambo knew that Senior Sport is not "SAFELY MADE" and should not be used with senior horses that have compromised teeth and digestive systems.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action pursuant to Pa. R. Civ. P. 1701 on behalf of itself and all members of the proposed Class (the "Class") as defined as:

> All persons in the Commonwealth of Pennsylvania who purchased Tribune Senior Sport between April 1, 2023 – May 30, 2023.*
>
> *Plaintiff reserves the right to amend the class definition prior to seeking certification.

41.    The following people are excluded from the Class: any judge or magistrate presiding over this action and members of their families; and Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which Defendant or its parent has a controlling interest, and their current or former officers and directors.

42.    Plaintiff and members of the Class satisfy the numerosity, commonality, typicality, adequacy, and predominance prerequisites for suing as representative parties.

43.    **Numerosity:** The exact number of members of the Class is unknown but, upon information and belief, it is estimated to be in the hundreds making individual joinder in this case impracticable. Members of the Class can be easily identified through objective criteria permitting self-identification in response to notice, and notice can be provided through techniques similar to those customarily used in class action controversies.

44.    **Typicality:** Plaintiff's claims are typical of the claims of other members

of the Class in that Plaintiff, and the members of the Class sustained damages arising out of the purchase of defective Senior Sport.

45.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Class. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Class, and Defendant has no defenses unique to Plaintiff.

46.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

a.    Whether Defendant knew that its Senior Sport was not properly screened?

b.    Whether Defendant breached its express promise that Senior Sport was "SAFELY MADE"?

c.    Whether Senior Sport manufactured during the class period was safe for consumption by senior horses?

d.    Whether Defendant breached the implied warranty of merchantability?

e.    Whether Defendant breached the implied warranty of fitness for a particular purpose?

14

f.    Whether Plaintiff and the Class are entitled to damages.

47.    **Superiority:** A class action is also a fair and efficient of adjudicating the controversy because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

48.    A class action is therefore superior to induvial litigation because:

a.    The amount of damages available to an individual plaintiff is insufficient to make litigation addressing Defendant's conduct economically feasible in the absence of the class action procedural device;

b.    Individualized litigation would present a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system; and

c.    The class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT,
### 15 U.S.C. § 2301, *et seq.* ("MMWA")
### (On Behalf of Plaintiff and the Class)

49.    Plaintiff hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

50.    The MMWA provides a private right of action by purchasers of consumer products against retailers who, *inter alia*, fail to comply with the terms of an implied or written warranty. 15 U.S.C. § 2310(d)(1). As alleged herein, Defendant specifically guaranteed that its Tribune Senior Sport was "SAFELY MADE" and appropriate for senior horses. Defendant breached this guarantee when it knowingly made Senior Sport feed available for sale that was not properly screened and therefore not "SAFELY MADE."

51.    Tribune Senior Sport is a consumer product, as that term is defined in 15 U.S.C. § 2301(1).

52.    Plaintiff and the members of the Class are consumers, as that term is defined in 15 U.S.C. § 2301(3).

16

53.    Defendant is a supplier and warrantor, as those terms are defined in 15 U.S.C. § 2301(4)-(5).

54.    The MMWA provides a cause of action for breach of warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).   Defendant breached the express warranty that the Senior Sport was "SAFELY MADE" as well as the implied warranty of merchantability, as alleged herein, which it cannot disclaim under the MMWA, 15 U.S.C. § 2308(a)(1), by failing to provide merchantable goods.  Plaintiff a have suffered damages as a result of Defendant's breach of warranty of as set forth herein. 15 U.S.C. § 2310(d)(1)-(2).

55.    Defendant was provided notice of the claims raised by Plaintiff and was afforded a reasonable opportunity to cure.  Defendant failed to cure only offering Plaintiff 20 free bags of feed.  Until Plaintiff's representative capacity is determined, notice and opportunity to cure through Plaintiff, and on behalf of the Class, can be provided under 15 U.S.C. § 2310(e).

56.    Defendant's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. § 2310(b); 15 U.S.C. § 45(a)(1).

57.    Plaintiff and the members of the Class have suffered, and are entitled to recover, damages because of Defendant's breach of express and/or implied warranties and violations of the MMWA.

17

58.    Plaintiff also seeks an award of costs and expenses, including attorneys' fees, under the MMWA to prevailing consumers in connection with the commencement and prosecution of this action. 15 U.S.C. § 2310(d)(2).  Plaintiff and the prospective Class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing consumers at the conclusion of this lawsuit.

### COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Plaintiff and the Class)

59.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

60.    Defendant manufactured and distributed Tribute Senior Sport throughout the Commonwealth of Pennsylvania for sale to Plaintiff and the Class Members.

61.    Defendant impliedly warranted to Plaintiff and the Class that Tribute Senior Sport was "SAFELY MADE" for senior horses and was merchantable and fit for its ordinary purpose.

62.    As alleged herein, Defendant breached the implied warranty of merchantability because Defendant knew that Senior Sport was not being  properly screened to ensure that it would be safe for consumption by senior horses.  The Tribute Senior Sport manufactured during the class period is therefore defective, unmerchantable, and unfit for its ordinary, intended purpose.

63.    Plaintiff gave reasonable and adequate notice to Defendant that the Senior Sport was defective, unmerchantable, and unfit for their intended use or

18

purpose.

64.     Plaintiff did not receive or otherwise could review, at or before the time of sale, any written warranty purportedly exclusions and/or limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable, and Plaintiff is entitled to all remedies available under Article 2 of the Uniform Commercial Code and Pennsylvania law.   Any purported warranty disclaimers, exclusions, and limitations were unconscionable and unenforceable.  As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and members of the Class have been injured in an amount to be proven at trial.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE
## (On Behalf of Plaintiff and the Class)

65.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

66.     Defendant knew or had reason to know at the time of sale that the Tribute Senior Sport was required for a particular purpose and that Plaintiff and the Class relied on Defendant's skill or judgment to select or furnish such goods.

67.     Defendant breached the implied warranty because the Tribute Senior Sport sold during the class period was defective as it contained large chunks of unscreened beet pulp and, therefore, was unfit for the ordinary, intended purpose at the time of sale.

68.    Defendant breached the implied warranty of fitness when it knowingly distributed and sold Tribute Senior Sport that it knew was not fit for their purpose and dangerous for senior horses to ingest due to the high risk of choking.

69.    After Plaintiff learned of the failures, it gave reasonable and adequate notice to Defendant that the Tribune Senior Sport was unfit for its intended use or purpose. Defendant has failed to cure.

70.    Plaintiff did not receive or otherwise could review, at or before the time of purchase, any written warranty containing any purported exclusions or limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable, and Plaintiff is entitled to all remedies available under Article 2 of the Uniform Commercial Code.

71.    As a direct and proximate result of the breach of implied warranty, Plaintiff has been injured in an amount to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS WARRANTY
## (On behalf of Plaintiff and the Class)

72.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

73.    Defendant expressly warranted that the Tribute Senior Sport was "SAFELY MADE" and reasonably fit for its intended use of feeding senior horses who Defendant conceded face an increased risk of choking.

74.    Plaintiff and the Class relied on such statements regarding the make-up and purpose of the Tribute Senior Sport.

75.     Defendant sold Tribute Senior Sport into interstate commerce with the intent that its statements and representations would be relied upon by consumers and other end users. These affirmations of fact and promises became part of the basis of the bargain for Tribute Senior Sport.

76.     At no point did Defendant advise Plaintiff and the Class members that it had suffered a malfunction of its screening process that resulted in larger chunk of beet pulp in the Senior Sport feed, which caused an increased risk of a senior horse choking.

77.     Had Defendant notified Plaintiff and the Class Members of this screening defect, they would not have paid for and otherwise would have sought a refund for the monies they paid for Tribute Senior Sport.

78.     As a direct and proximate result of Defendant's breach of warranty, Plaintiff and the Class suffered damage in amounts to be proven at trial.

## COUNT V
## NEGLIGENCE – MANUFACTURING DEFECT
## (Individually on behalf of Plaintiff only)

79.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

80.     The Tribute Senior Sport sold during the class period was defective because it was not properly screened and posed a serious risk of choking and death to senior horses.

81.     The Tribute Senior Sport was defective when it left Defendant's hands

21

and was expected and did reach Plaintiff without any substantial change.

82. Defendant failed to exercise reasonable skill, care and diligence of an ordinary prudent manufacturer in the manufacturing and marketing the Tribute Senior Sport.

83. As a direct and proximate result of Defendant's negligent manufacturing of Tribute Senior Sport, Victory died, and Chance suffered serious medical issues.

84. Plaintiff incurred expenses for the treatment of both horses in an attempt to save their lives.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of itself and all others similarly situated, request the Court enter an Order:

a. Certify the proposed class, appoint Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

b. Award Plaintiff and the Class actual, compensatory, incidental and/or consequential damages;

c. Award Plaintiff and the Class punitive damages for their reckless decision not to warn and/or recall Senior Sport with direct knowledge that it was not properly screened for beet pulp due to a manufacturing defect;

d. Award Plaintiff and the Class pre-judgment and post-

22

judgment interest on all amounts awarded;

     e.    Award Plaintiff damages for the care and death of Victory and the care of Chance;

     f.    Award Class Counsel their attorneys' fees and costs pursuant to the MMWA; and

     g.    Granting all other legal and equitable relief that the Court deems necessary and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

                 **SALTZ MONGELUZZI**
                 **& BENDESKY, P.C.**

          By: */s/ Patrick Howard*
                 SIMON B. PARIS, ESQ.
                 PATRICK HOWARD, ESQ. (PA Atty ID. #88572)

                 *Counsel for Plaintiff and the Proposed Class*

Dated:  July 18, 2023

## VERIFICATION

The averments or denials of fact contained in the foregoing document are true based upon the signer's personal knowledge or information and belief. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true. This Verification is made subject to the penalties of 18 Pa. C.S. §4904, relating to falsification to authorities.


SARAH MATUSICK, EXECUTIVE DIRECTOR

23